

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8011 | **DATE** | 5/23/2001 |
| **CASE TITLE** | DANIEL PANFIL vs. CITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendants City of Chicago and Gerald Ciesla's motions to dismiss [11-1], [12-1] are granted. The Fifth Amendment claims are dismissed with prejudice, and the Fourteenth Amendment claims are dismissed without prejudice. The court declines to retain supplemental jurisdiction over the state claims against the City of Chicago and Gerald Ciesla for wrongful arrest and detention. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 2 5 2001 | 17 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 5/23/2001 date mailed notice | |
| SB | courtroom deputy's initials | jad mailing deputy initials | |

FILED FOR DOCKETING
01 MAY 24 PM 5:01

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL PANFIL, )
)
Plaintiff, ) No. 00 C 8011
)
v. ) Suzanne B. Conlon, Judge
)
CITY OF CHICAGO, et al. )
)
Defendants. )

**DOCKETED**
**MAY 2 5 2001**

## MEMORANDUM OPINION AND ORDER

Daniel Panfil sues the City of Chicago ("the city"), Gerald Ciesla, individually and in his representative capacity as a Chicago police officer, Keith Nygren, individually and in his capacity as the Sheriff of McHenry County, and the County of McHenry (collectively "defendants") for civil rights violations by depriving him of his liberty without due process of law under 42 U.S.C. § 1983 (Count I), recovery of reasonable attorneys' fees under 42 U.S.C. § 1988 (Count II), and pendent state claims of wrongful arrest and detention (Count III). The city and Ciesla move to dismiss.[1]

## BACKGROUND

The court accepts well-pleaded allegations as true and draws all reasonable inferences in Panfil's favor. Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). In late 1999, the Circuit Court for McHenry County, Illinois, issued a warrant for the arrest of Dale Panfil, the brother of Daniel Panfil. On December 24, 1999, Ciesla, an officer of the Chicago Police

---

[1] The city and Ciesla filed separate motions to dismiss; the court addresses both motions. Citations to the city and Ciesla's motions to dismiss are indicated as "Def. Br. A at __" and Def. Br. B at __" respectively, and Panfil's responses correspond to the city and Ciesla's motions, bearing the citation "Pl. Resp. A at __" and "Pl. Resp. B at __."

Department, arrested Panfil pursuant to the McHenry County warrant. Panfil informed Ciesla that he was Daniel Panfil, not Dale Panfil, and produced a driver's license that identified him as Daniel Panfil. Ciesla transported Panfil to the Chicago Police Department Jefferson Park (16th District) station. Panfil was processed and then transported to the Cook County Jail. On December 26, 1999, Panfil was transported to the McHenry County Jail and taken before a magistrate the next morning. He pleaded not guilty. While in defendants' custody, Panfil was allegedly denied access to medication prescribed for his recently operated throat, causing bleeding. Panfil was released six days after his arrest.

## DISCUSSION

### I. Motion to dismiss standard

In deciding a motion to dismiss, the court considers whether relief is possible under any set of facts consistent with the complaint's allegations. Pokuta v. TWA, 191 F.3d 834, 839 (7th Cir. 1999). A motion to dismiss will be granted only if no set of facts would warrant relief. Frieri v. City of Chicago, 127 F. Supp.2d 992, 994 (N.D. Ill. 2001). A motion to dismiss tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

### II. § 1983 [Count I]

#### A. Fifth Amendment

The city and Ciesla argue that Panfil's § 1983 claim under the Fifth Amendment must be dismissed because they are not federal actors and Panfil does not allege their actions were taken under color of federal law. Monitor v. City of Chicago, 653 F. Supp. 1294, 1299 (N.D. Ill. 1987) (Fifth Amendment protection applicable to federal, not state action); Jackson v. Elrod, 655 F. Supp. 1130, 1133-34 (N.D. Ill. 1987). The city is a municipal corporation, and Ciesla works as a police officer for

the city. Thus, they are state actors. Panfil recognizes in his responses that his Fifth Amendment claims against the city and Ciesla are predicated on the Fourteenth Amendment, applicable to state actors. Panfil's Fifth Amendment claims against the city and Ciesla must be dismissed.

B.     **Fourteenth Amendment**

Construing the complaint in a light most favorable to Panfil, he attempts to plead a due process violation of the Fourteenth Amendment. Panfil alleges defendants unreasonably seized him and deprived him of liberty without due process of law while acting under color of state law. Compl. at ¶ 12.[2]

1.     **Ciesla**

Ciesla cites Parratt v. Taylor, 451 U.S. 527, 528-38 (1981) and Daniels v. Williams, 474 U.S. 327, 331-32 (1986), to argue that Panfil's Fourteenth Amendment claim fails because he does not allege more than in a conclusory fashion a deprivation of life, liberty or property without due process of law. Neither cited case concerns allegations essential to survive a motion to dismiss, and neither supports Ciesla's proposition. Panfil contends that pursuant to Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), he has adequately plead a claim for due process. Leatherman determined there is no heightened pleading standard for § 1983 actions brought against a municipality and its agents. 507 U.S. at 167-69. All Panfil must allege to state a § 1983 claim is that the conduct complained of was committed by a person under color of state law, and this conduct deprived Panfil of his rights, privileges or immunities secured by the Constitution

---

[2] Panfil admits he did not plead a Fourth Amendment or a Fourteenth Amendment violation for denial of access to the courts. Pl. Resp. B at 3-4.

3

or law of the United States. Parratt, 451 U.S. at 535, *rev'd on other grounds*, Daniels 474 U.S. at 330-31.

Ciesla next asserts that the availability of state tort remedies to redress Panfil's claims satisfy due process requirements. Indeed, Panfil's allegations for his § 1983 due process claim form the basis for his pendent state claims of wrongful arrest and detention. A due process claim for deprivation of a liberty interest is not stated if an adequate state law remedy is available. Hood v. City of Chicago, 927 F.2d 312, 314 (7th Cir. 1991); Guenther v. Holmgreen, 738 F.2d 879, 882 (7th Cir. 1984); Weber v. Village of Hanover Park, 768 F. Supp. 630, 635 (N.D. Ill. 1991); Baltz v. Shelley, 661 F. Supp. 169, 181 (N.D. Ill. 1987). Without any legal support, Panfil responds that Ciesla's attempt to shield himself from liability under the Local Governmental & Governmental Employees Tort Immunity Act, 745 ILCS 10/1-102 *et seq.*, would effectively prevent him from seeking relief in a state court. This argument has no merit. Bolden v. Carter, No. 94 C 7603, 1995 WL 591447, at * 4 (N.D. Ill. Sept. 22, 1995); *see* 745 ILCS § 10/1 *et seq.*; Easter House v. Felder, 910 F.2d 1387, 1405-06 (7th Cir. 1990) (qualified immunity does not render state law remedy inadequate). Because Panfil has adequate state law remedies for his § 1983 due process claims, they are dismissed without prejudice. Thus, the court will not address Ciesla's claim that Panfil should have brought his claim for unlawful seizure under the Fourth, not the Fourteenth Amendment.

### 2. The city

To state a claim against the city under § 1983, Panfil must plead that his constitutional injury resulted from a municipal policy. Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 692 (1978). *Respondeat superior* liability is not permitted against a municipality. Id. To plead an injury results from a municipal policy, Panfil must allege either that the city had "an express policy" that,

when enforced, caused a constitutional deprivation; or that the city had "a widespread practice" that, although not authorized by written law or express municipal policy, was so permanent and well-settled as to constitute a "custom or usage" with the force of law; or that the constitutional injury was caused by a person with "final policy-making authority." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). Further, the city asserts that nothing Panfil alleged can be construed as a municipal policy because the essence of his complaint is that he was arrested and held on a valid warrant for his brother. Without more, the city contends this is an isolated incident that cannot form the basis of a § 1983 municipal policy claim. Board of County Comm'r of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-06 (1997) (plaintiff must show that through city's deliberate conduct it was the "moving force" for the alleged injury). Panfil fails to allege that a municipal policy caused his constitutional injury. Panfil acknowledges this deficiency, but responds that he is "now prepared to allege that the City has a widespread practice at some of its district police stations of not fingerprinting arrestees upon being processed and said practice is so permanent and well-settled at some of those stations that it is a custom or usage with the force of law." Pl. Resp. A at 3. Panfil cannot amend his complaint in a response to a motion to dismiss. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Solon v. Kaplan, No. 00 C 2888, 2001 WL 123769, at *4 (N.D. Ill. Feb. 13, 2001).

### 3. Valid warrant, probable cause, and indefinite detention

There is no unconstitutional deprivation of liberty, and thus, no cognizable claim under § 1983, if Panfil was arrested pursuant to a valid warrant or probable cause. Baker v. McCollan, 443 U.S. 137, 143-44 (1979). Probable cause exists where the facts and circumstances within Ciesla's knowledge were sufficient to warrant a prudent person's belief that an offense has been committed. Edwards v. Cabrera, 58 F.3d 290, 291 (7th Cir. 1995); *see* Qian v. Kautz, 168 F.3d 949, 953 (7th Cir.

5

1999). An arrest is not unconstitutional if the information Ciesla relied upon later proves to be erroneous because probable cause is assessed based on the information available at the time of the arrest. McKinney v. George, 726 F.2d 1183 (7th Cir. 1984). In fact, Ciesla is allowed reasonable mistakes in his determination of probable cause. Brinegar v. United States, 338 U.S. 160, 176 (1949).

Panfil was arrested on a valid warrant. Thus, the city and Ciesla argue Panfil cannot maintain his § 1983 claims, unless he can prove Ciesla lacked probable cause to arrest him despite the warrant. Myatt v. City of Chicago, 816 F. Supp. 1259, 1266 (N.D. Ill. 1992). Panfil contends Baker is distinguishable because there the plaintiff was arrested pursuant to a warrant that named him as the suspect. Daniel Panfil was arrested on a warrant issued in the name Dale Panfil. But "aliases and false identifications are not uncommon." Hill v. California, 401 U.S. 797, 803 (1971); see Brown v. Patterson, 823 F.2d 167, 169 (7th Cir. 1987). Because of this, the city and Ciesla argue that officers who in good faith believed the arrestee is their suspect, even after the arrestee produced identification to show he was not, cannot be held liable. Hill, 401 U.S. at 803-04. Panfil argues that Hill found the officers' disregard of the arrestee's identification reasonable because his answers about firearms in plain view were evasive. Id. at 804 n.9. Here, there is no evidence that Panfil was evasive or uncooperative. Panfil argues reasonable men could differ as to whether his arrest by Ciesla was proper because he readily produced identification to prove he was not the wanted suspect and pleaded with Ciesla that he was innocent. Pl. Resp. B at 7. Panfil argues Ciesla ignored the evidence in front of him to arrest the wrong person. Id. at 8.

Ciesla's arrest of Panfil pursuant to a valid warrant was reasonable. Daniel Panfil and his brother, Dale Panfil, have similar first names, the same last name, and are the same gender and race. Panfil himself acknowledges he matched the physical description in the warrant. Id. at 7. Although

Panfil protested his innocence and produced his license to show he was not his brother, it was reasonable for Ciesla to take Panfil in for further investigation. *See* Brown, 823 F.2d at 169. This is especially so because Panfil was in an automobile. If Ciesla let him go, it might have taken a long time to find him again if he were the person named in the warrant. *See* Patton v. Przybylski, 822 F.2d 697, 699 (7th Cir. 1987).

Panfil cites Hernandez v. City of Chicago, No. 99 C 6441, 2001 WL 128246 (N.D. Ill. Feb. 9, 2001), to argue that given the information before Ciesla, he should have investigated Panfil's claim of innocence. But law enforcement personnel do not have a constitutional duty to "investigate independently every claim of innocence" or "perform an error-free investigation." Baker, 443 U.S. at 146; Almeida v. Sheahan, No. 98 C 1550, 1998 WL 781109, at *4 (N.D. Ill. Nov. 4, 1998). Hernandez states only that a police officer cannot ignore information he discovered that reveals his mistake and then not promptly release the arrestee from custody. Panfil asserts that Hernandez applies to his situation because of the similarity in facts. But in Hernandez the plaintiff, Emiliano Hernandez, alleged in his complaint that he protested he was not Enrique Hernandez, and his family members came to the police station where he was held with copies of his passport, social security card, and resident alien card to show he was not Enrique. *Id.* at *4. Panfil contends that he too protested he was innocent, produced his license, and the entire contents of his wallet with other forms of identification, and his father accompanied Panfil to the police station and pleaded that Panfil was not the person in the warrant. Pl. Resp. A at 10-11. However, Panfil alleged in his complaint only that he protested he was not guilty and produced his license to show he was not Dale Panfil. Compl. at ¶ 6.

Panfil asserts that the existence of a valid warrant and probable cause in this case does not bar his § 1983 claim. He argues that Baker left open the possibility that detention after a prolonged period

7

of time pursuant to a valid warrant in the face of repeated protests of innocence may support a constitutional claim. 443 U.S. at 144. Indeed, an extended detention on the basis of misidentification can sustain a § 1983 claim. Johnson v. Chicago, 711 F. Supp. 1465, 1469 (N.D. Ill. 1989); Almeida, No. 98 C 1550, 1998 WL 781109, at *4-5. These circumstances include, at a minimum, a period of detention exceeding three days and repeated claims of innocence. Baker, 443 U.S. at 144-45 (three days over holiday weekend cannot support constitutional claim); Johnson, 711 F. Supp. at 1470; Almeida, No. 98 C 1550, 1998 WL 781109, at *4-5. Panfil alleges that he protested innocence, but the city held him at most two days before transferring him to McHenry County's custody. Compl. at ¶¶ 5-9. Detention of two days is insufficient to sustain Panfil's § 1983 claims.

Panfil argues that by parsing the amount of time he spent in the custody of each defendant, he could be indefinitely held for periods of two days without any claim for a due process violation, regardless of everything else, including his innocence. Panfil cites no statutory or case law to support his speculative argument, and this is not the case.

### III. § 1988 [Count II]

The city and Ciesla argue that Panfil fails to allege any constitutional violation in Count II, but merely, requests attorneys' fees. Panfil responds that Count II is properly alleged and should not be dismissed. As discussed *supra*, Panfil has adequate state remedies to pursue his claims of wrongful arrest and detention, and thus his federal due process rights in Count I are satisfied. Further, Panfil fails to state a § 1983 claim against the city in Count I. Count II is therefore dismissed because it incorporates by reference the defective allegations of Count I, adding only a request for reasonable attorneys' fees.

## IV. State claims of wrongful arrest and detention [Count III]

Finally, because Panfil's federal claims are defective, the court will not entertain his pendent state law claims. 28 U.S.C. § 1367(c).

## CONCLUSION

The motion to dismiss is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 23, 2001